DECISION 
This declaratory judgment matter is before the Superior Court on remand from the Rhode Island Supreme Court In its remand, the Supreme Court directed the Superior Court to determine a single factual issue: whether, before May 2, 1977, RICO Corporation's (RICO) predecessor-in-interest had been operating a lawfully licensed sand and gravel.-earth removal business upon its property in the Town of Exeter (Town or Exeter. RICO's counsel moved for leave to amend its Complaint to add another declaratory judgment claim based on estoppel. The-Town objects to RICO's motion to amend.
 Facts and Travel
An extensive summary of the facts and travel of this case is available in the Supreme Court's Decision, 787 A.2d 1136 (R.I. 2001). A brief summary of the facts pertinent to the remand and subsequent motion follows.
In February of 1989, RICO bought a piece of property from a third party believing that there was a sanctioned, legal nonconforming earth removal use allowed thereon. When RICO attempted to "renew" its gravel bank license in March of 1995, Exeter discovered that a license had never been properly issued and asked the company to show cause why it should not issue a cease and desist order or otherwise review, limit, or condition the company's operations. After arguing its case to the Town Council and Zoning Board, RICO filed a petition in the Superior Court seeking declaratory judgment and injunctive relief in order to prevent the Town from interfering with its operations. The Town flied a counter claim for declaratory judgment, asserting that RICO's use of the property violated various town ordinances and challenged the existence and validity of the RICO's alleged nonconforming use of the property.
RICO moved for partial summary judgment on its petition for declaratory relief and the Town cross-motioned for summary judgment on its counter claim. After reviewing the summary judgment hearing materials, a Superior Court hearing justice "treated and considered the nonconforming use issue as a non-issue," as neither party perfected an appeal from an earlier decision of the Exeter Zoning Board of Review that purportedly determined the legal status of RICO's earth removal activities on the property. Id. at 1143. In granting partial summary judgment in favor of RICO based on the res judicata effect of the Zoning Board's decision, the hearing justice concluded that "RICO has a valid, preexisting nonconforming gravel bank use." 787 A.2d at 1141.
In 1998. a trial on the remaining issues raised by the parties was conducted before a second and different Superior Court justice sitting without a jury. After hearing testimony and reviewing the evidence, that trial justice determined the preexisting nonconforming use findings made earlier by the summary judgment motion hearing justice had become the law of the case and, as such, were binding upon her. However, the trial justice rejected RICO's separate contention that the Town was equitably estopped from "prohibiting its blasting of ledge." Id. at 1142-1143. After entry of the final judgment, the parties flied cross-appeals.
The Supreme Court reversed the motion hearing justice's grant of partial summary judgment, holding that the motion justice erred in extending res judicata treatment to the Zoning Board's decision because the Zoning Board lacked subject matter jurisdiction over the nonconforming use issue. Id. at 1143. Therefore, the Superior Court motion hearing justice was precluded from acting upon and deciding the parties' respective cross-motions for summary judgment, as the issue raised by the Town challenging the existence of the alleged nonconforming use constituted a material issue of fact. Id. at 1145. Consequently, the Supreme Court remanded the case to the Superior Court for "a full evidential)' and fact intensive inquiry at trial to determine whether, before May 2, 1977,[1] [RICO'S predecessor-in-interest] had been operating a lawfully licensed sand and gravel-earth removal business upon his property." Id. The Supreme Court concluded:
 "The proper resolution of that material fact was essential to support the validity of the Superior Court's final judgment on October 4, 1999, that was entered following a trial on the merits of RICO's complaint and the town's counter claim. Its absence compels us to vacate the October 4, 1999 final judgment order. . . In light of our remand order, we do not reach the other issues presented to us in this appeal.[2] The papers in this case are to be returned to the Washington County Superior Court for further proceedings in accordance with this opinion." Id. at 1146.
Following the remand, the parties conducted additional discovery on the single issue framed by the Supreme Court. On April 30, 2002, based on this additional discovery, RICO filed a Motion to Amend its Complaint in order to add another claim for declaratory relief. Among other things, the proposed Amendment states "the Town did not enforce the earth removal ordinance or issue any licenses under the earth removal ordinance until more than ten (10) years after enactment of the earth removal ordinance." (RICO's Memo., Exhibit A, pages 11-12.) Therefore, RICO now requests a declaration that the "Town is estopped from retroactively enforcing the earth removal ordinance against RICO in a manner that is at variance with the Town's findings that RICO's earth removal operation is a lawfully established nonconforming use." (Id. at 12.) Further, RICO alleges it is also entitled to a declaration that the "Town is estopped from arguing that RICO's earth removal operation is not a lawful, pre-existing, non-conforming use" (Id.) To support its Motion to Amend, RICO relies on the liberal language and application of Super.R.Civ.P. Rule 15(a).
The Town objects to RICO's Motion, arguing that the proposed Amendment violates the decision of the Supreme Court and is futile. (Town's Objection at 1-2.) Moreover, Exeter asserts that the joiner of a declaratory judgment count relative to estoppel with an agency appeal is inappropriate, and that principles of res judicata prevent RICO from litigating its estoppel claim again. (Id.)
RICO filed a Reply Brief in response to the Town's Objection. In the Reply Brief; RICO states:
 "[T]he Town failed to explain that until the decision from the Supreme Court was rendered, whether RICO was operating a lawfully licensed sand and gravel — earth removal operation was never an issue, Accordingly, RICO would be severely prejudiced if it was [sic] prevented from amending its Complaint to include a Count to address this new issue raised by the Supreme Court. RICO will allege, among other things, "that it was lawfully in existence based on the doctrine of estoppel." (RICO Reply Brief at 1.)
Additionally, RICO argues that pursuant to Super.R.Civ.P. Rule 15, the Town bears the burden of showing that it would incur substantial prejudice if the Motion to Amend were granted. (Id. at 2.) Because the Town has not alleged any prejudice, RICO asserts that its Motion to Amend should be granted. (Id.)
 Analysis
Amendments to the original pleadings generally may not be made once the suit has reached the appellate level. See 6 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1489 at 698 (2d ed. 1990) (noting certain exceptions to the general rule not applicable herein). Still, once a case has been remanded, the lower court may permit new issues to be presented by an amended pleading that is consistent with the judgment of the appellate court. Id. at 698-699. On remand, the issues decided by the appellate court become the law of the case and the trial court's duty is to comply with the appellate mandate according to its true intent and meaning, as determined by the directions given by the reviewing court. Courtright v. Courtright, 2001 Ala. Civ. App. LEXIS 722 (Ala. Civ. App. 2001) (citing Ex. parte Jones. 774 So.2d 607, 608 (Ala. Civ. App. 2000)), Tollett v. City of Kemah. 285 F.3d 357, 364 (5th Cir. 2002) ("A corollary of the law of the case doctrine is the mandate rule, which provides that a lower court on remand must implement both the letter and spirit of the appellate court's mandate, and may not disregard the explicit directives of that court").
In implementing a mandate. a trial court should consult the reviewing court's opinion to ascertain what was intended by the mandate. Tollett,
285 F.3d at 364. Under the mandate rule, a trial court may not consider on remand matters decided by an appellate court. Cyprus Bagdad CopperCorp. v. Arizona Dep't of Revenue, 992 P.2d 5 (Ariz. Ct. App. 1999). The trial court may address any issues that the appellate court did not dispose of either expressly or impliedly. Id. at 7. However, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. State ex rel. Hilt Truck Line, Inc.v. Jensen, 357 N.W.2d 455, 457 (Nov. 1984). Where an appellate court reverses and remands a cause to the trial court for a. special purpose, on remand the trial court has no power or jurisdiction to do anything except to proceed in accordance with the mandate as interpreted in the light of the appellate court's opinion. Id.
R.I.Super.R.Civ.P. Rule 15(a) liberally permits amendment absent a showing of extreme prejudice. Hendrick v. Hendrick, 755 A.2d 784 (R.I. 2000). Pursuant to similar versions of Rule 15 (a) in other jurisdictions, permission to amend has been granted at various stages of the litigation, and even on remand following an appeal. See e.g. SEC v.Gonzalez de Castilla. 184 F.Supp.2d 365, 381 (S.D.N.Y. 2002), Jones v.Wayland 402 N.E.2d 63, 67 (Mass. 1980), Spitz v. Bache Co., 596 P.2d 365
(Ariz. 1979). In Gonzalez de Castilla, the court noted:
 "If the underlying circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, etc. — the leave sought should, as the rules require, be freely given." 184 F. Supp.2d at 381. (citing 6 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 1488 at 652-57 (1990)).
Further, in Jones v. Wayland, the Supreme Judicial Court of Massachusetts stated:
 "The fact that a motion to amend is tendered alter remand for further proceedings does not change the rule that leave to amend shall be freely granted whenever appropriate. A trial judge on remand still possesses, as a general matter, broad discretion to allow any appropriate amendment." 402 N.E.2d at 67.
Nevertheless, Rule 15 (a) is not applicable to the instant matter because it is not consistent with the Supreme Court's remand instructions, which are both explicit and clear. The Rico Court's four-paragraph conclusion sets forth a sole, "core" factual issue for determination on remand, as well as the function and importance of that single fact Rico Corp., 787 A.2d at 1145-1146. Therefore, this Court need not speculate as to the intent behind the Supreme Court's mandate. SeeTollett, supra. In its Memorandum and Reply Brief, RICO cites no authority to support its position that, on remand from an appellate court, a trial court still possesses the authority to grant a motion to amend pursuant to Rule 15 contrary to a specific instruction from that appellate court. See State ex rel. Hilt Truck Line, Inc v. Jensen, supra. Consequently, the language of the Supreme Court's remand renders RICO's Motion to Amend inappropriate, despite the broad language of Rule 15(a).
RICO asserts that the estoppel issue was not precluded by the Supreme Court's remand, but occasioned by it due to a common fallacious belief amongst all of parties regarding RICO's legal nonconforming use of its property. Thus, RICO argues that it has not had the opportunity to litigate the estoppel issue on the merits. However, in its decision, the Supreme Court impliedly addresses both the estoppel and mistake issues.Rico Corp. 787 A.2d at 1139-1140. Particularly, the Supreme Court explained the history of the property and the putative license in great detail and noted several errors by Town officials and agencies.[3] SeeId. Yet the Court did not state that such errors could form the basis of an estoppel or could even be reasonably relied upon, and specifically cited case law to the contrary. Id. (citing Town of Johnston v. Pezza,723 A.2d 278, 284 (RI. 1999). Additionally, in 1995, when the Town filed its counter claim asking for a declaration challenging RICO's alleged legal nonconforming use. RICO had notice that not all parties involved in the litigation shared its misconception of the status of the property. RICO could have advanced the estoppel theory at that time, as the status of the earth removal operation was placed in doubt at that time. Instead, RICO waited seven years before it first advanced this new theory. Guided by concerns of judicial economy and finality in litigation where a litigant has had the benefit of a day in court, in some fashion, on the merits of the claim, this Court must deny RICO's Motion to Amend.See Cureton v. NCAA, 252 F.3d 267, 273, 275 (3rd Cir 2001).
 Conclusion
Based on the clear, explicit instructions provided to this Court on remand from the Supreme Court, and further guided by concerns of judicial economy and finality in litigation, this Court denies RICO's Motion to Amend without commenting on the merits of the Motion pursuant to Rule 15(a).
RICO has essentially conceded the only factual issue still in dispute; namely, that before May 2, 1977, RICO's predecessor had not been operating a lawfully Licensed sand and gravel-earth removal business upon his property. Therefore, RICO's predecessor could not have acquired a valid nonconforming use benefiting the property, and none could have been conveyed to RICO.
Judgment shall enter in favor of the Town of Exeter on its declaratory action. Counsel shall submit an appropriate order for entry.
[1] The Supreme Court noted that the first comprehensive zoning ordinance became effective on May 2. 1977. and the subject property was then placed in a rural/residential zone district in which gravel or sand banks and quarries became prohibited uses. Id. at 1145. The 1977 zoning ordinance followed a 1973 ordinance regulating earth removal operations in the Town, which "made unlawful any earth removal operations thereafter in the town unless. . . first licensed by the town council." Id. at 1138. Thus, any unlicensed earth removal operations in Exeter, commencing after the 1973 earth removal ordinance but before the May 2, 1977 zoning ordinance, would not constitute a "legal preexisting use" and could not have ripened into a valid nonconforming use. See Id. at 1145.
[2] Before the Supreme Court, RICO briefed the issue of whether Exeter should be equitably estopped from absolutely prohibiting the extraction of ledge on the subject property. Brief of RICO at 12, RICO Corp. v. Townof Exeter. 787 A.2d 1136 (R.I. 2001) (No. 2000-86). After reviewing the materials submitted to the Supreme Court by the parties, this Court notes that the estoppel issue discussed in the Supreme Court's opinion appears to be different than the estoppel argument that RICO is presently advancing.
[3] "It appears from the record that on September 26. 1985, about twelve years after the town's earth removal licensing ordinance was enacted, and over eight years after the town's zoning ordinance was enacted, [RICO's predecessor] for the first time decided to go to the town clerk's office and request an earth removal license . . . . It appears, however, that he did so without complying in any significant manner with the necessary prerequisite license application requirements contained in the earth removal licensing ordinance, or in compliance with the town's zoning ordinance. The town clerk, on September 26, 1985, for no discernibly valid reason, granted and issued him an earth removal License for a term not to exceed thirty-six months. [Town of Johnston v.Pezza, 723 A.2d 278, 284 (R.I. 1999) ("When [a] proposed use does not conform to the zoning requirements, the [town clerk] has no authority to issue a (license].')] In doing so, the town clerk appears to have completely ignored not only the license filing requirements of the own's earth removal ordinance, but also the towns zoning ordinance, which eight years earlier had designated [the predecessor's] property to be in an RU-3 rural/residential zone within which sand, gravel and quarrying operations are prohibited uses. In addition, we discern no evidence in the record before us to demonstrate that the town council previously had approved the earth removal license application filed by Marcel within the rime periods proscribed by sections 15 and 16 of the earth removal ordinance.
In 1988. three years after [the predecessor) obtained his questionable earth removal license, RICO expressed an interest in purchasing the. ., property. At that time, as noted earlier, the property was zoned only for RU-3 rural/residential use. RICO agreed to purchase the . . . property provided that the (predecessor] could confirm to RICO the existence of a nonconforming earth removal use for their property that would permit a sand and gravel earth removal operation to be continued thereon, and provided also that [the] existing earth removal license could be transferred to RICO. On November 16. 1988, [the predecessor] somehow was able to obtain a document entitled "Zoning Certificate' from the town's zoning inspector. That document purported to confirm the existence of [a] current "Gravel Bank License' and noted that the property conformed "to the provisions of the Town of Exeter Zoning Ordinance.' In February 1989, RICO purchased the property.
It should be noted that the zoning inspector never stated in the "Zoning Certificate' that a nonconforming use to conduct an earth removal or sand and gravel bank existed on the . . . property. Indeed, the words "nonconforming use' do not appear anywhere on the face of the certification.
It is interesting to note that the certification issued by the then-zoning inspector relating that the Property Has Current Gravel Bank License' apparently was in error. The records before us reveal that [RICO's predecessor] was issued his first and only earth removal license on September 26, 1985. That license, even if valid, pursuant to section 6 (4) in the licensing ordinance, was valid for only a thirty-six month period, and expired unless renewed. There is no evidence showing its renewal . . . . Consequently, on September 25, 1988, (the] license apparently had expired. Thus, when on November 16, 1988, the zoning officer certified it as being a "current" gravel bank License, be appears to have been clearly mistaken." (footnotes incorporated into text).